We'll hear argument this morning in our first case, Golden Corral Corporation v. Illinois Union Insurance Company. And we'll hear from Appellant's Counsel whenever you're ready. May it please the Court. My name is Will Hartzell, and I'm here on behalf of Golden Corral. Your Honors, two insurance coverage cases with the same facts, the same policy language, and the same law should reach the same result. This matter and North State Deli- Do you think that happens frequently with insurance? You know, that these policies are pretty similar across, you know, multiple insureds. And there seem to frequently be events that affect numerous insureds, right? Hurricane, a flood, damaging hail, things like that. Does this, surely this comes up frequently? Your Honor, surprisingly it does not. And I think that goes to the uniqueness of the COVID-19 pandemic and the response- Does the policy language mean that the cases should be kind of open to reconsideration whenever there's new law? Well, Your Honor, I think the key point in this case is a tight nexus between North State Deli and Golden Corral. And that nexus is rooted in the various government orders that shut down operations in North Carolina. Because it's not rooted in the same contract, is it? No, it's not. But it's rooted in similar contract language. It's similar. It's not even verbatim the same contract language. No, but it uses contract language that's promulgated by industry organizations that the insurance companies adopt in whole or in part. It both uses this language- So just to be clear, this claim you're making is not limited to your client. It's literally any company that previously litigated and lost this issue could now move to reopen the final judgment. They could move, Your Honor, but I don't know if those motions would be successful. I mean, the mere fact that they could and that it would be prima facie a plausible motion suggests, as I think Judge Rushing suggests, this is a potentially very sweeping holding you're asking for. Potentially, Your Honor, but we're asking for a holding that would affect all cases with materially identical policy language, all cases effect by the very specific government orders, specifically the March 17, 2020- Okay, but every single state in the country issued COVID shutdown orders. But the nexus in this case is the March 17 order issued by Governor Cooper. It's what shut down the restaurants in North State Deli. It's what shut down the North Carolina stores in Golden Corral. And Golden Corral is a North Carolina company. Its heartbeat is in North Carolina. Can I ask you about your certification argument? Because it frankly strikes me as bizarre. Why should the fact that the North Carolina courts have chosen to be a massive outlier, because the last time I checked, it's literally the only state in the country that doesn't allow certification in some circumstances. So why should the fact that the North Carolina courts, for reasons that are good to them, have decided to not even allow a federal court to ask them pre-final judgment what the answer to a state law question is, why should that make it easier to reopen a final judgment? Your Honor, because it places individuals like, or companies like Golden Corral- Take it up with the state of North Carolina. Your Honor, but we do not remove this matter to federal court. Illinois Union removed this matter to federal court. We filed this case in state court. And when Illinois Union removed this case to federal court, they are the ones that deprived the North Carolina courts- And so once you saw litigation was working its way through the state courts, you obviously moved to stay your federal litigation so that we could get an authoritative construction from the North Carolina courts, right? We did not, Your Honor. In fact, you actively opposed that. Your Honor, we actively opposed a stay of discovery pending the court's consideration of a motion for judgment on the pleadings. We did not oppose a stay of the litigation. Did you ever ask for a stay of the litigation? We did not, Your Honor. But by the time this case had ended and this court had affirmed the trial court's grant motion for judgment on the pleadings, the petition for discretionary review in North State Delhi hadn't been granted. There was no certainty that this court- So you filed a cert petition with the Supreme Court to try to keep your case non-final as long as possible, right? Your Honor, we did not file a cert petition. So you made a variety of tactical choices that seemed like the good decision at the time and simply didn't work out the way you hoped. I don't know how that's extraordinary circumstances. Your Honor, I would point this court to Justice Jackson's dissent in the BLOM bank matter, where she talks about the litigation choices that bear fault when seeking Rule 60b-6 relief. And she talks about the litigation choices that end litigation. We did not make any choice to end litigation. But you did. You didn't seek in bank and you didn't seek cert. That was a choice to let the litigation end. Incorrect, Your Honor. We did seek in bank. I'm sorry. Thank you for correcting me. You didn't seek cert. That was a foregone choice to keep the litigation pending. No, we did not. We did not seek cert. But no case has ever – no court has ever held that the failure to seek cert bars you from seeking Rule 60b-6 relief. No, I'm not saying it bars it. But why is it relevant to – I mean, your claim essentially – and look, there's a lot of intuitive force to this. This seems weird. It seems potentially wrong. It seems potentially unfair. I get all that. But that's not the test. The test is whether there's extraordinary circumstances. And I would point this court's attention to the Pierce case and its progeny that established that extraordinary circumstances exist when two related cases proceed, one in state court, one – Is Pierce the one where it was the exact same vehicular accident? It was, Your Honor. Okay. So that's not just related, right? It's the same event. There's a very tight – yes, Your Honor. There's a very tight nexus. But I'll also point this court's attention to the Second Circuit's approach in the terrorist attacks case in which there was a wide-ranging group of plaintiffs, individuals injured and terrorists in the 9-11 attacks, property owners, property insurers who sought to hold the Kingdom of Saudi Arabia liable for those acts.  But why isn't that case different? Because the Second Circuit basically said, like, mea culpa. The whole reason that there's these cases that have different outcomes is because we, the Second Circuit, changed our mind about something. And that – like, it's our fault. Like, we did this. Your Honor, you're right. The eerie component is not present in the terrorist attacks case. But the eerie component adds on top of what the Second Circuit did. The Sixth Circuit in the Blue Diamond Coal case recognized that the eerie component is one of the core aspects of the Pierce ruling, that when you have two litigations proceeding in state and federal court, form selection should not be outcome determinative. I mean, I know that's a good principle in theory, but anybody with even a passing familiarity with eerie doctrine knows that there are routinely outcome determinative differences between being in state and federal court. There are, Your Honor, but they're not when we have two cases that are so closely related. We have two cases arising out of the same government order, this March 17 shutdown order. That's the framing that you want. I guess to go back to what Judge Rushing started with, why isn't another way to say it is we have two cases arising out of different contracts between different parties? Your Honor, there has been no requirement to have identity of contract. Do you know any case that supplied this transaction test in the context of a contract claim? They all seem to be tort claims to me. Your Honor, they are. And I'm aware of any case that has granted a Rule 60B-6 in a contract case. But Pierce does not talk about the type of claim. I just don't think you're going to get that far with Pierce, because we want to start adding additional differences between this case and Pierce. In Pierce, the Tenth Circuit wasn't reviewing a district court decision for abuse of discretion. The Tenth Circuit was making the decision itself. That's right, Your Honor, and this is up here on abuse of discretion. But it is an error of law, or pardon me, an error of law is an abuse of discretion. And here the district court rejected Pierce. What's the error of law? In rejecting Pierce without any reasonable basis to do so. It's not an error of law for a district court to disagree with a Tenth Circuit decision. You have to explain why. District courts don't have to explain why they disagree with an out-of-circuit decision, do they? Well, they have to offer substantial basis for the decisions they make. How about this court has repeatedly suggested that it would be rare if ever that a change in law would get you extraordinary circumstances, which is what the district court said. That's right, and this court has articulated that generally, a change in decisional law does not entitle one to Rule 60b-6 relief. I think, Your Honor, I think that holding mirrors the Agostini holding of the United States Supreme Court, where that court held that intervening developments of law by themselves are not sufficient for Rule 60b-6 relief. So what else do we have here other than an intervening change? We have a deferential standard of review, abuse of discretion. We have a very difficult hurdle, frankly, for your client with the extraordinary circumstances test. What else do we have? Well, Your Honor, in addition to the change in law that came in North State Delhi, in which the North Carolina Supreme Court clarified that COVID losses are covered by insurance policies, with the language direct physical loss, we have this close connection between North State Delhi and the Golden Corral case. These matters were filed four days apart. They're the same type of injury under the same policy language, under the same body of law, and complain about the same government orders that shut them down. This is a very- Even going back to Pierce, the language is the same transaction or occurrence. So even if they're-we agree with you that these two cases are closely tied because they're connected to the same government policy. That doesn't make them the same transaction or occurrence. I would disagree, Your Honor, but I would also point you to the elite IT case out of the Tenth Circuit, which is an update of Pierce filed in 2024, in which they articulate- in which they describe that Pierce is appropriate merely when there are factually related cases. Other courts inciting Pierce have talked about merely related cases. And, Your Honors, I would also point you back to the terrorist attacks case in the Second Circuit. The two cases there involved one lawsuit against the Kingdom of Saudi Arabia and another lawsuit against the state of Afghanistan, both alleging wide-ranging conduct in support of terrorism. So in that case, when they granted Rule 60B6 relief and cited Pierce, those are two cases in which we had-we did not have an identity of defendants, like we don't have here. But, again, these cases are deeply related. Weren't they all eventually going to be put in the same MDL? It seemed like that was part of the Second Circuit's reasoning, was that there was an MDL here and one case was just late to the party on that, not because of any fault of their own. I think that is true, Your Honor, but the Second Circuit also recognized how intricate the pleadings were in the terrorist attacks case, how complicated the facts were, but held that the logic of Pierce nevertheless should still apply. And I think that is wisdom that the Second Circuit is departing, that Pierce should apply regardless of the scope of the event. Yes, we have unified contract language here that the insurance companies have chose to use. And, yes, we have a wide-reaching pandemic event that had a multitude of effects, which the logic of Pierce should still apply. The fact remains that these two cases are deeply related, and the only reason that Golden Crown lost coverage and North State Delhi had coverage in the state court was the fact that Illinois Union removed this case to federal court and deprived the state courts of any way to exercise any view on this specific policy right here. Your Honors, I also want to focus on some of the case law that the district court used in rejecting Pierce because it simply does not support the contention that Pierce should be rejected within the circuit. Most notably, it cited the Magessic case out of the Seventh Circuit. And the Magessic case specifically stated that the Fourth Circuit's approach to Rule 60b-6 jurisprudence and changes in decisional law is compatible with the Tenth Circuit's approach in Pierce. Sorry, who said this? The Seventh Circuit in Magessic. With all due respect, why do I care what the Seventh Circuit thinks about the compatibility of our precedent with the Tenth Circuit's precedent? Because, Your Honor, to rely on this case law for the district court to reject Pierce in the Fourth Circuit and citing a case that does not stand for that proposition, rather stands for the proposition that Pierce should apply in the Fourth Circuit is an error of law. And if this court affirms the district court's rejection of Pierce, it will be putting this court out on an island. I'm sorry, the district court's rejection of Pierce? Correct. Did the district court come out and say that the same transaction or occurrence can never be the basis for a Rule 60? I didn't see that. Well, Your Honor, despite us arguing Pierce, it declined to follow Pierce and it didn't apply Pierce. Well, it declined to apply Pierce in the way you wanted it to apply Pierce. That doesn't necessarily mean it said Pierce was wrong. It did not say, in a case that is materially identical to Pierce, I, the district court, would reach a different decision. It certainly didn't say that, right? The district court said it declined to follow Pierce, Your Honor, and the fact that it did not apply Pierce, even though through our urging, to me is a rejection of Pierce. But to my point that if this court affirmed the rejection of Pierce, this would be the only circuit court to do so, and it would put itself in tension with at least six of its sister courts, the 10th Circuit, who articulated Pierce, as well as the 2nd, the 5th, the 6th, the 7th, and the 11th, Your Honors. So does your argument hinge on us finding this to be the same transaction or occurrence? It hinges on this court finding sufficiently related facts between this case, our case here in North State Delhi. You can use the transaction or occurrence test in Pierce. Other courts have articulated it a little bit differently, and I'm not sure that when it comes to Rule 60B-6 jurisprudence, a bright-line test is necessarily the best approach. Rule 60B-6 itself is a safety valve. It should be flexible, case-specific, but yes, Your Honor, you need to find sufficient commonality between this matter and North State Delhi such that Rule 60B-6 relief would be appropriate. And, Your Honors, I also want to emphasize the trial court's error when it held that Golden Corral was required to seek a stay. No case law has ever held that you're required to seek a stay in order to be entitled to Rule 60B-6 relief. That is simply not a proposition. Wait, you said entitled. You mean entitled or do you mean eligible? Correct, Your Honor. Is anyone ever entitled to Rule 60B relief? You're right, Your Honor. You're entitled in order to be eligible for Rule 60B-6 relief. The closest any court comes is this court in Aikens, which held that a Rule 60B-6 movement was not entitled to Rule 60B-6 relief when they failed to take a number of steps to preserve the court's jurisdiction. And there, one of the steps that the court determined that the movement could have taken was seeking a stay pending exhaustion of administrative remedies. Well, I don't think that the district court said it was a requirement. I think the district court simply noted it as one factor in its analysis. Your Honor, but regardless, this factor has never been articulated. The failure to seek a stay has never been a basis for fault such that a Rule 60B-6 movement is not entitled to relief. Well, as Judge Heidens pointed out, there wasn't simply a failure to seek a stay. There was vigorous, in the words of the district court, opposition to doing so. Your Honor, again, we opposed a stay of discovery. We did not oppose a stay of litigation. Our mantra was to expeditiously pursue our claims and to try to seek the relief we were entitled to. Your Honors, I see my time is up. Thank you. Mr. Hacker, we'll hear from you. Good morning, Your Honors. May it please the Court, John Hacker for Illinois Union. The Court's questions and counsel's answers, I think, demonstrate the insurmountable problem that Golden Corral has in obtaining what effectively would be Rule 60B-6 relief as a matter of law in this case. It is settled, as again I think the Court's questions and I think counsel's answer actually conceded, that a change in decisional law subsequent to a final judgment provides no basis for relief under Rule 60B-6. As this Court recently said in the Ross case, Judge Rushing, you were on that panel reaffirming Moses v. Joyner. What you need are other factors in addition to, on top of, supplementing the change in decisional law that establish that there are extraordinary circumstances that warrant relief based on that change in law. On top of that, a district court has a, quote, circumstances, other factors exist establishing the required extraordinary circumstances. In this case, as I understand it, Golden Corral, I think, cites essentially two other factors that it says establish extraordinary circumstances. Again, as a matter of law because, of course, the district court has already exercised its wide range of discretion, evaluated all of the arguments that Golden Corral made, and the district court exercised its discretion to determine it was not appropriate to award such relief. So the issue here is whether it's required as a matter of law based on the factors that Golden Corral cites. And the answer is it is not. The first, or which one is first in their mind, but the two of them are this Erie idea that there's this required uniformity, they say, between state and federal law, and the district court correctly rejected that. First of all, under Erie, as many courts have held, Bat's case out of the Fifth Circuit, De Weerth, Flanders, Reamer from the Eighth Circuit, Flanders from the Seventh Circuit, it is the job of a district court to predict state law. That's what Erie is about. There's not an independent requirement that you always have, under all circumstances, uniformity between federal forum and state forum on matters of state law. That sort of overrides Rule 60b-6's interest in finality. And if you think about it, it doesn't make any more sense that you would require that than you would require federal uniformity when you have federal law, when you have decisions that overturn federal law, as in the Ross case. In the Ross case, under federal law, Ms. Ross had been found liable for $160 million in monetary relief that the Supreme Court later said, and this court affirmed that judgment, the Supreme Court later said, that's not permissible. She can't be held liable under federal law for that under the subsequent decision, and this court said in Ross that Rule 60b-6 relief was not appropriate under those circumstances, under federal law. Just curse me, I don't know the answer to this question. Have you looked into what the answer to this in North Carolina State Court would be? Like if the North Carolina Supreme, under North Carolina law, if the North Carolina Supreme Court issues a decision that unsettles what a lot of people thought was the law, can people reopen final judgments in North Carolina State Court? That's a fantastic question, Judge Heitens, and to be honest, I have not looked at that. I will certainly look at it after the argument and see what the answer is. It just literally occurred to me now, so. Yeah, no, it's an interesting question, but of course, we are governed here by federal Rule 60b-6, although it would at least be certainly interesting to find out the answer to that. Well, because if the answer is no, that would pretty much obliterate the Erie argument. I mean, yes, but I don't think there's no way. I know that you don't think the Erie argument is right anyway. Right, right, it's already lying in ashes, so that would only pour more water over the already destroyed argument, I think. But the other argument that I think they spend more time in, and, well, I don't know whether they believe in it more, but they certainly spend more time on, is this idea that it arises out of the same event, which traces back to the Pierce case in the Tenth Circuit. And as the Court's questions suggest, I think the Court understands, at least, the reasons the district court was correct in rejecting that. The first point is, just to be clear, this Court has not adopted any version of that test, and it's not obvious that it should exist for the reasons I don't need to go into, because I don't think the Court needs to reach that, but for the dissent. So just to be clear, you think – I'm happy to listen to your argument about why we shouldn't adopt it at all, but there's no reason we would have to decide that question. A hundred percent. Not at all. And I'm not even going to go into it. I just want to point out that the dissent in Pierce is a very effective argument for why it actually doesn't make sense as its own sort of independent, extraordinary circumstance for warranting relief. But no decision of this Court has adopted it. But the decisions of courts that have, the few courts that have, including the Tenth and the Second Circuit, have adopted versions of this, plainly don't apply, because they're clearly talking about, both on their facts and the logic of the cases, a situation where you've got two parties that are asserting tort claims arising out of the exact same tort, the same injury. It's never been applied, to my knowledge, and I think counsel conceded an answer to Judge Hyten's question, in any contract case, certainly not, when you have separate contracts with separate insureds with separate or different language. I mean, we're not resisting the idea that the core language is materially the same, but there's various things that go into contracts, as the Court is aware, when you're construing particular language in the context of the full contract. So the fact that the same words appear in different contracts absolutely can matter, and the contracts are being asserted in different factual circumstances, under different, in this case would be the same government orders in North Carolina, but certainly different factual scenarios, factual circumstances, of the losses that are asserted by the insured. So we've never had a case applying it under those circumstances. And what you have are, in Pierce, as Judge Rushing pointed out, it's literally the exact same auto accident. You have effectively the same thing in the terrorist attacks cases, where you have the same tort, the same terrorist incident, destroying the World Trade Center, and you've got two sets of plaintiffs that, just by a happenstance of timing, as Judge Rushing pointed out, they weren't able to consolidate their cases at the right time. The Court said specifically they should have been, but for the timing, they would have been consolidated, and there wouldn't have been any different treatment at all, and the mini-en banc procedure wouldn't have led to the different outcomes. So as I think Judge Hytens put it, the Second Circuit was essentially saying, my bad, our bad, in having done that. And so we can correct that. That was, in that Court's view, a sufficiently extraordinary circumstance. Can I give you the hardest typo I've been able to come up with in the contracts context? So imagine a company. It could be these plaintiffs, it doesn't matter. So they basically have two types of COVID losses. They have COVID losses from the initial pandemic, the initial shutdowns in March and April of 2020. And so they submit a claim to their insurer under their 2020 policy. And then they get shut down again because of the Delta variant in early 2021. And the same company submits the same claim to the same insurance company. But because the 2020 claim goes to final judgment and they lose, the 2021 claim is still pending when this intervening decision happens. How do you think a court would analyze that situation? So now we've taken out different parties and we've taken out different contracts. It's literally the same policy, the same insurer, the same plaintiff, the same defendant. The legal theories are exactly the same. And the only variation is that the initial shutdown claim has gone to final judgment and the Delta variant claim hasn't. So that is what I did anticipate, unlike your last question, under the North Carolina state law. And I think the answer is, the first answer is the answer appellate courts always hate to hear from lawyers, which is that's a different case that's not presented here in the most critical way. And I don't think the answer to that one would illuminate anything about this case. I do think there would be a very good argument by the insurer under those circumstances that you would not reopen that prior judgment. That does present this question whether this court would adopt this kind of principle, the principle of law stated in Pierce and applied in terrorist attacks, to the same, literally the same, it would be the same transaction if you treat the transaction as the same contract. But there's no particular logical reason why that would itself create an extraordinary circumstance because you've got a prior judgment. So the material differences between that case and this one are, I want to make sure I understand, you think the reason, you start off by saying that case is not this case, and it's not just not this case in a trivial way, but it's not this case in a material way. So the material reasons that that situation is different than this one are what? Well, because, I mean, and I think they are material in that you have different policies, right? So literally a different contract. Literally a different contract, and not just literally different contracts. This, I guess, would be sort of not fighting the hypothetical, but adjusting it because insurance policies often have different, sometimes you have foreign contracts that are literally the same, but there's almost always endorsements and things that actually make them meaningfully different, or you have to construe the language in light of various endorsements. And you see this in opinions all over the COVID coverage law as to whether or not the existence, for example, of a virus exclusion, which we have here, tells you something meaningful about the direct physical loss or damage language. And courts and litigants make various arguments about that, and this indeed is exactly a difference we have between this case and North State Delhi, right? Whether that tells you something meaningful about direct physical loss or not is something that would have to be litigated, but you wouldn't just apply North State Delhi for sure and say we have the same outcome. You would both have to sort of rethink or reanalyze the direct physical loss language, but then also separately, of course, apply the virus exclusion. Then you also have different factual circumstances, Judge Hytens, that may be somewhat minimized by the fact that you're talking about just a shutdown order, and the argument is that the same shutdown order applies to everybody. But in many COVID coverage cases, the insured is making an argument about the way in which their property was affected, the reasons that they had to shut down. Was it from lack of customer demand, lack of access to the facilities, government order, what did the government order require? So you're going to have different factual scenarios as well. Some of those may be actually true even when you have the same policy and the same insurer, there may be different facts that would be relevant. So that's why I wouldn't concede that even that situation would trigger that same event circumstance. But here, again, for all of these reasons and more we could discuss at great length, this is not at all in any sense the same event in the sense that the Pierce case was talking about. The last point I would make, Your Honors, is on this question of Golden Corral's litigation choices, and I think Golden Corral is sort of arguing it backwards. The point, and I think one of Your Honors' questions got to this, the point of the fact that they didn't even try to seek a stay and, to the contrary, tried to accelerate and get to a result as quickly as possible, which is perfectly understandable. Nobody's criticizing them for that. But, indeed, that shows why the case is not an extraordinary one. That's just the normal course of events. Litigants make decisions like that. It might be a little bit unusual to try to push forward like they did, but it's not outside the norm in any sense. And so the fact that they didn't do that just shows why this is the kind of case that's going to come up all the time. They might have a better case for Rule 60 bead relief if they had sought a stay and had tried to do everything to wrap themselves under North State deli. Filed a motion to remand, asked for a stay, tried to get this case back to state court. Right, all of those kinds of devices they could have tried. Then they might have, as they say, only a better case for 60B6 relief because they would say, look, we tried to do everything we could. It didn't work out. The defendants dragged us into federal court. It was over kicking and screaming objections. We insisted from the beginning. It was a question of state law. I need the state court's answer. Under those circumstances, again, they would have a better claim for 60B relief. But even under those circumstances, you've got courts like Flanders and Batts where situations where parties did seek stays, did try to do that kind of thing, and the courts in those cases said even that wasn't enough to warrant 60B relief to overcome the profound and fundamental interest in finality that underlies Rule 60B6, Rule 60B generally, and Rule 60B6 in particular. The interest, the reason that the courts have been so strict in requiring extraordinary circumstances and respecting and deferring to the exercise of discretion of the district courts who are closest to the case in determining whether or not that such relief is warranted here. The district court determined based on a complete and full analysis, and back to Judge, I think it was Judge Rushing or Judge Heiden's questions about whether the court addressed the Pierce case. The court didn't reject Pierce categorically. What the court was saying is I'm not going to adopt Pierce because it's not the same event situation. The Fourth Circuit hasn't adopted that rule, and I'm not going to apply that principle here. But even if the court had said I disagree with the Pierce case and I don't want to follow it, there's no requirement that a district court follow an out-of-state decision that this court has not yet adopted. That would not in itself be an error of law, and certainly wouldn't be an error that requires the court as a matter of law to find that there wasn't abuse of discretion under these circumstances. The court acted within its discretion. It determined that Rule 60B, Sixth Relief, was not warranted because Golden Corral had not demonstrated the kind of extraordinary circumstances required for such relief. If the court has no further questions, we will submit. Thank you, Your Honors. Thank you. Mr. Hartzell, you have some rebuttal time. Your Honors, I'd like to make a few brief points. First, to Judge Hyten's point about remand, we had no basis to remand. There is undoubtedly complete diversity of jurisdiction here, or diversity of citizenship, pardon me, and there's no requirement for us to try to take futile actions in order to preserve our Rule 60B, Sixth rights. The second point I'd like to make is to push back on Illinois Union's contention about ERIE in this case. There is lines of case law saying that the Rule 60B, Sixth does not apply even when a court makes a bad ERIE guess, but here we have more than a mere bad ERIE guess. We have divergence results emanating from the same event with an outcome-determinant principle based upon whether one case proceeded in state court and one case proceeded in federal court. I'd also like to point out that Judge Hyten went on about the identity of contract and the identity of parties in his hypothetical about a potentially stronger Rule 60B, Sixth case. But I'll point Your Honors' attention back to the terrorist attacks case in the Second Circuit when there we had multiple defendants, multiple theories of liability, so we have these wide-reaching circumstances that we have here. And still in that court or in that case, the Second Circuit stated that the logic of Pierce should apply regardless of the intricate facts. But they also said it's partly because we screwed this up and it was our fault and we're undoing our own screw-up. You're asking us to ignore that part of the Second Circuit's decision. No, Your Honor. I'm asking you to look at the Second Circuit's opinion, recognize its application of Pierce, and view that in light of other circuit courts' opinions which have held, like I previously pointed, the blue diamond coal, that when this eerie principle is violated and forum choice is outcome determinative, that creates greater strength, and this Rule 60B, Sixth rule should apply with even greater force. If Your Honors doesn't have any questions, I'll sit down.  That's it. Thank you. We thank you both for your arguments today. We will descend and greet counsel and then proceed to our next case.
judges: Allison J. Rushing, Toby J. Heytens, Nicole G. Berner